IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| CAPITOL SPECIALTY INSURANCE CORPORATION, | CV 17-54-BLG-SPW-TJC |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE** |
| vs. | |
| BIG SKY DIAGNOSTIC IMAGING, LLC, | |
| Defendant. | |

Plaintiff Capitol Specialty Insurance Corporation ("Capitol Specialty") brings this action seeking a declaratory judgment that it had no duty to defend Defendant Big Sky Diagnostic Imaging, LLC ("Big Sky") in an underlying lawsuit, and that it is entitled to reimbursement of defense costs. (Doc. 1.)

Presently before the Court are the parties' cross-motions for summary judgment.[1] (Docs. 21, 26.) The motions have been referred to the undersigned under 28 U.S.C. § 636(b)(1)(B), and are fully briefed and ripe for the Court's review. (Docs. 29, 34, 41.)

---

[1] Capitol Specialty also filed a Request for Oral Argument on the cross-motions for summary judgment. (Doc. 43). The Court finds oral argument is not necessary to decide the motions. Accordingly, the motion is **DENIED**.

1

Having considered the parties' submissions, the Court **RECOMMENDS**
Capitol Specialty's motion be **GRANTED** and that Big Sky's motion be
**DENIED**.

## I.    FACTUAL BACKGROUND[2]

This case concerns whether Capitol Specialty had a duty to defend Big Sky
against a malpractice claim arising from Big Sky's alleged failure to properly
diagnose breast cancer during a patient's annual mammogram.

For several years, Patricia Harby had annual mammograms at Big Sky.
(Doc. 30 at ¶ 12.)  In 2013, Ms. Harby underwent her annual mammogram at Big
Sky on September 9 (*id.* at ¶ 12.b.), and a bilateral breast ultrasound on September
12.  (Doc. 35 at ¶ 19.b.)  Dr. Jesse Cole, M.D. informed Ms. Harby that the
ultrasound examination did not reveal any abnormal findings and that she should
not be concerned.  (*Id.* at ¶ 19.d.)

After conducting Ms. Harby's mammogram and ultrasound, Big Sky lost its
American College of Radiology accreditation for mammography.  (Doc. 30 at ¶
13.)  On June 12, 2014, Ms. Harby received a certified letter from Big Sky
advising her that the mammogram she underwent on September 9, 2013 did not
meet the Mammography Quality Standards Act, and the results of the imaging

---

[2] The background facts are taken from the parties' Statement of Stipulated Facts
(Doc. 10), and Big Sky's and Plaintiff's Statements of Disputed Facts (Docs. 30,
25), and are undisputed except where indicated.

were unreliable.  (*Id.* at ¶ 12.c.)  Ms. Hardy returned to Big Sky for repeat testing, which revealed that Ms. Harby had breast cancer.  (*Id.* at ¶ 12.d.)

Following the loss of accreditation, Big Sky's existing liability insurer chose not to renew Big Sky's insurance coverage, starting in the fall of 2014.  (Doc. 30 at ¶ 14.)  Therefore, Big Sky obtained a healthcare organization professional liability policy through Capitol Specialty, effective on August 22, 2014.  (*Id.* at ¶ 1; Doc. 35 at ¶ 1.)  The policy was effective for one year.  Big Sky purchased subsequent liability policies from Capitol Specialty in August 2015 and August 2016.

On September 4, 2015, Ms. Harby and her husband, Greg Harby, filed an Application for Review of Claim with the Montana Medical Legal Panel ("MMLP").  (Docs. 22-2 at 1-15; 30 at ¶ 4.)  The Application form required the Harbys to identify the "Health Care Providers Against Whom Claim is Made."  (Doc. 22-2 at 1.)  The Harbys named "Jesse Cole, M.D.," "David Chamberlain, M.D., Medical Director Big Sky Diagnostic Imaging, LLC," and "Big Sky Diagnostic Imaging, LLC."  (*Id.*; Doc. 30 at ¶ 5.)  The Application included a "Statement of Incident" that alleged, among other things, negligence on the part of Dr. Cole and Big Sky in failing to diagnose Ms. Harby's cancer.  (Doc 22-2.)

Shortly thereafter, the Harbys submitted an Amended Application for Review of Claim to the MMLP on September 11, 2015.  (Docs. 30 at ¶ 7; 22-3.)  The Amended MMLP Application removed Big Sky from the section of the form

3

for "Health Care Providers Against Whom Claim is Made" and added it the section

for "Other Necessary and Proper Parties Not Designated Health Care Providers."

(Docs. 30 at ¶¶ 8-9; 22-3 at 1.)  No other substantive changes were made; the

factual allegations in the Amended Application were identical to those in the initial

Application.  (Docs. 22-2; 22-3.)

On August 10, 2016, Dr. Cole, on behalf of Big Sky, signed an Application

for a Policy with Capitol Specialty for the subsequent year.  (Doc. 30 at ¶ 15.)  Dr.

Cole represented that Big Sky was not "aware of any actual or alleged fact,

circumstance, situation, error or omission, which can reasonably be expected to

result in a Claim, suit or proceeding being made against" Big Sky.  (*Id.*; Doc. 22-7

at 4.)

On September 14, 2016, the Harbys filed a Complaint against Dr. Cole and

Big Sky in Montana's Second Judicial District Court, Silver-Bow County.  (Doc.

30 at ¶ 17.)  The Complaint made the same substantive allegations as those

contained in the Application filed with the MMLA.  (*Id.* at ¶ 18.)

Big Sky submitted the claim to Capitol Specialty on October 28, 2016.

(Doc. 30 at ¶ 19.)  On April 27, 2017, Capitol Specialty accepted the defense of

Big Sky in the underlying lawsuit, under a reservation of rights.  (Doc. 30 at ¶ 20.)

All claims against Big Sky in the underlying lawsuit were ultimately dismissed

with prejudice on March 9, 2018.  (Doc. 30 at ¶ 21.)

4

## II.    THE POLICIES

The effective dates and termination dates of the Capitol Specialty policies

issued to Big Sky were:

2014 Policy:  August 22, 2014 – August 22, 2015

2015 Policy:  August 22, 2015 – August 22, 2016

2016 Policy:  August 22, 2016 – August 22, 2017

(Doc. 10 at ¶¶ 5-7.)

The policies were "claims-made" policies, which provided coverage only for

claims made against Big Sky and reported to Capitol Specialty during the policy

period.[3]  Specifically, the polices provided:

THIS INSURING AGREEMENT PROVIDES CLAIMS-MADE
AND REPORTED COVERAGE.  "CLAIMS" MUST FIRST BE
MADE AGAINST THE INSURED AND REPORTED TO US
DURING THE POLICY PERIOD UNLESS AN EXTENDED
REPORTING PERIOD APPLIES.

(Doc. 22-1 at 3.)

In addition, the policies specified that:

If, during the Policy Period or any Extended Reporting Period, any
Claim for an Incident is first made against any Insured, as a condition
precedent to its right to any coverage under this Policy, the Insured
shall give Us written notice of such Claim as soon as practicable
thereafter, but in no event later than: (1) sixty days after the
Expiration Date or earlier cancellation date of this Policy. . ."

---

[3] The coverage terms of the 2015 Policy are the same as the coverage terms of the
2016 Policy.  (Doc. 30 at ¶ 8.)  The 2014 Policy is not at issue in this case.

(*Id.* at 19.)

The policies defined a "Claim" as follows:

a demand which seeks damages, any circumstance which is likely to result in a demand for damages, or a Suit.  Claim does not include a request for medical records, a Patient Incident report, a variance report, or any other report made for loss prevention purposes, a subpoena for documents, an investigation brought solely by or on behalf of any governmental agency, or a demand or action seeking solely non-monetary or injunctive relief.

(*Id.* at 9.)

Further, the policies excluded coverage for any:

Incident that happened before the Retroactive Date if applicable, or after the Retroactive Date if, on the Inception Date of this Policy, the Insured knew, had been told, should have known or had notified a prior insurer or administrator of any other risk transfer instrument that such Incident may result in a Claim.

(*Id.* at 18.)

Capitol Specialty had knowledge of Big Sky's loss of mammography accreditation.  Therefore, the policies also incorporated a "mammogram exclusion," which excluded "[a]ll claims arising from any Mammograms performed by or on behalf of the Named Insured."  (*Id.* at 25; Doc. 35 at ¶¶ 15, 18.)

/ / /

/ / /

/ / /

6

## III.  APPLICABLE LAW

### A.  Summary Judgment Standard

A court will grant summary judgment if the movant can show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment is warranted when the evidence presented is so conclusive that one party must prevail.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  The moving party has the initial burden to submit evidence demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Material facts are those which may affect the outcome of the case.  *Anderson*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party.  *Id*.  If the movant meets its initial responsibility, the burden shifts to the nonmoving party to establish a genuine issue of material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  When parties file cross-motions for summary judgment, the Court reviews each motion on its own merits.  *Fair Housing Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

/ / /

/ / /

**B.      Application of Montana Law**

The Court's jurisdiction over this action is based on diversity of citizenship. Therefore, the Court must apply the substantive law of Montana. *In re Cty. of Orange*, 784 F.3d 520, 523-24 (9th Cir. 2015).

It is well-settled in Montana that an insurer's "duty to defend arises when a complaint against an insured alleges facts, which if proved, would result in coverage." *Tidyman's Mgmt. Services, Inc. v. Davis*, 330 P.3d 1139, 1149 (Mont. 2014) (*citing Farmers Union Mut. Ins. Co. v. Staples*, 90 P.3d 381, 385 (Mont. 2004). In comparing allegations of liability with policy language "to determine whether the insurer's obligation to defend was 'triggered,' a court must liberally construe allegations in a complaint so that all doubts about the meaning of the allegations are resolved in favor of finding that the obligation to defend was activated." *Staples*, 90 P.3d at 385. The "fundamental protective purpose of an insurance policy," paired with the insurer's obligation to provide a defense, require coverage exclusions to be narrowly construed. *Id*. Therefore, the insurer must "construe the factual assertions from the perspective of the insured." *Id.*

The duty to defend arises from the language of the policy. Without coverage under the policy terms, no duty exists. *RQR Development, LLC v. Atlantic Cas. Ins. Co.*, 2014 WL 6997935, *2 (D. Mont. 2014) (citing *Grimsrud v. Hagel*, 119 P.3d 47, 53 (Mont. 2005). However, "[u]nless there exists an unequivocal

8

demonstration that the claim against the insured does not fall within the insurance policy's coverage, an insurer has a duty to defend." *Staples*, 90 P.3d at 385.

In Montana, the interpretation of an insurance contract is a question of law. *Scentry Biologicals, Inc. v. Mid-continent Cas. Co.*, 319 P.3d 1260, 1264 (Mont. 2014). A court interpreting an insurance policy is to read the policy as a whole and, to the extent possible, reconcile the policy's various parts to give each meaning and effect. *O'Connell v. Liberty Mut. Fire Ins. Co.*, 43 F.Supp.3d 1093, 1096 (D. Mont. 2014) (*citing Newbury v. State Farm Fire & Cas. Ins. Co. of Bloomington, Ill.*, 184 P.3d 1021 (Mont. 2008)). Any ambiguities in the insurance contract are construed against the insurer and in favor of extending coverage. *Revelation Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 206 P.3d 919, 929 (Mont. 2009).

## IV.   DISCUSSION

Capitol Specialty argues there is no coverage for the underlying malpractice claim for several reasons. First, Capitol Specialty asserts coverage is precluded under the 2015 Policy because Big Sky did not provide notice of a claim during the policy period.[4] Second, Capitol Specialty argues coverage under the 2016 Policy is precluded by the Prior Knowledge exclusion. In addition, Capitol Specialty

---

[4] Capitol Specialty asserts there is no coverage under the 2014 Policy for the same reason. Big Sky does not dispute that there is no coverage under the 2014 Policy. Accordingly, the Court will not further address the 2014 Policy.

asserts there is no coverage under the 2016 Policy because Big Sky failed to disclose the Harbys' potential claim on the 2016 Policy Application.  Finally, Capitol Specialty contends there is no coverage under any of the policies for the independent reason that the policies expressly excluded coverage for any claim arising from mammograms.

Big Sky counters that there is coverage under the 2015 policy, and alternatively that coverage is not excluded under the 2016 Policy.  Big Sky further argues the mammogram exclusion does not preclude coverage.

## A.    Coverage under the 2015 Policy

As a condition to coverage, the Policy required that a claim be made against Big Sky during the policy period, and reported to Capitol Specialty before the applicable reporting period expired.  (Doc. 22-1 at 3.)  This is a typical condition in claims-made policies and differentiates them from occurrence policies.  Coverage under a claims-made policy "is determined by claims made within the policy period, regardless of when the events that caused the claim to materialize first occurred." [5]  *Schleusner v. Continental Cas. Co.*, 102 F.Supp.3d 1148, 1152 (D.

---

[5] Claims-made policies may be further classified as either claims-made, or claims-made-and-reported policies.  *Schleusner*, 102 F.Supp.3d at 1152.  Pure claims-made policies do not require that the claim be reported by a set date.  *Id.* Whereas, under claims-made-and-reported policies, "'notice is the event that actually triggers coverage' and is generally required within the policy period or extended reporting period."  *Id.*  The policies at issue here are claims-made-and-reported policies, as they condition coverage on claims being made and reported

Mont. 2015).  Conversely, an occurrence policy covers events that occur during the policy period, even if the claim is not made until years later.  *Id.* at 1151-52. Claims-made policies were "specifically developed to limit the insurer's risk by placing a temporal limitation on coverage."  *Id.*

Relevant to the policies considered here, several courts have pointed out that claims-made policies were developed to address difficulties insurers faced in writing professional malpractice insurance policies.  *See e.g., Craft v. Philadelphia Indemnity Ins. Co.*, 343 P.3d 951, 957-58 (Colo. 2015) and *Templo Fuente De Vida Corp. v. National Union Fire Ins. Co.,* 129 A.3d 1069, 1075-76 (N.J. 2016).  With an "unlimited tail" from occurrence policies, insurance companies were required to forecast the cost of risks insured for years or even decades into the future.  *Templo Fuenta De Vida Corp.*, 129 A.3d at 1076.  Therefore, to reduce the risks associated with occurrence policies for professional liability, insurance companies began to shift to claims-made policies.  *Id.*  Under claims-made policies, "the risk to the insurer passes when the policy period expires."  *Craft*, 343 P.3d at 958.  With this limitation, insurers can construct a more predictable rate structure to address risks in insuring against professional negligence claims.  *Id.*

---

within specified deadlines.  For ease of discussion, the Court will refer to the policies simply as claims-made policies.

In accordance with the terms of the 2015 policy, then, the Court must first determine whether a claim was made against Big Sky in 2015.  Second, the Court must determine whether the claim was timely reported.

### 1.  Whether a Claim was Made During the 2015 Policy Period

Capitol Specialty contends the Harbys' initiation of the MMLP proceedings in September 2015 was sufficient to put Big Sky on notice of a claim.  Therefore, Capitol Specialty asserts the claim arose during the 2015 Policy period and should have been reported within that policy's reporting period.

Big Sky takes the position that the MMLP Application was not a claim triggering its duty to notify the insurer because the Harbys abandoned their claims against Big Sky when they amended the MMLP Application.  Big Sky's argument is based on its removal from the "Health Care Providers Against Whom Claim is Made" portion of the MMLP form.

The Montana Supreme Court has recognized that a claim can arise under an insurance policy before a lawsuit is actually filed.  *Herron v. Schutz Foss Architects*, 935 P.2d 1104, 1108 (Mont. 1997) (holding a letter from the claimant's attorney constituted a claim under a claims-made policy).  In *Herron*, the Court explained that "[w]here the alleged tortfeasor has reasonably been put on notice by the injured party that he intends to hold the tortfeasor responsible for his damages, it would, indeed, be anomalous to hold that a claim is, nevertheless, not made until

12

a suit is actually filed.  To do so would encourage litigation as opposed to
negotiation and settlement."  *Herron*, 935 P.2d at 1108.

Here, the Policy provided that a "Claim" includes "any circumstance which
is likely to result in a demand for damages."  (Doc. 22-1 at 9.)   The Court finds the
Harbys' MMLP Application objectively meets this definition.

The filing of an application before the MMLP is a statutory prerequisite to
bringing a medical malpractice lawsuit.  Mont. Code Ann. § 27-6-701.  Therefore,
the Harbys' MMLP Application was a circumstance indicating that litigation was
likely forthcoming.  Moreover, the MMLP Application alleged Big Sky acted
negligently with regard to Ms. Harby's September 2013 mammogram.  (Doc. 22-4
at 4, 8-9, 11.)  The MMLP Application also indicated the Harbys suffered damages
as a result of the alleged malpractice.  The Harbys stated that "[d]ue to the delayed
diagnosis of the breast cancer, Patricia Harby experienced increased severity and
extent of necessary treatment for the breast cancer resulting in a reduction of the
loss of opportunity for a better outcome and survivability."  (Doc. 22-4 at 12.)
They further stated, "Greg Harby has a loss of consortium claim relating to the
delayed diagnosis of the primary right breast cancer."  (*Id.*)  Thus, the Court finds
the MMLP Application, fairly read, constitutes notice that the Harbys were
"likely" to make "a demand for damages," and were not "seeking solely non-
monetary or injunctive relief."

The Harbys did amend the MMLP Application to move Big Sky from the "Health Care Providers Against Whom Claim is Made" section of the MMLP form, to the "Other Necessary and Proper Parties Not Designated Health Care Providers" section of the form.  (Docs. 22-2 at 1; 22-3 at 1, 3.)  But that fact alone certainly does not mean the allegations against Big Sky were abandoned. Presumably, the Harbys amended the Application because Big Sky is not a "Health Care Provider" as that term is statutorily defined.  *See* Mont. Code Ann. § 27-6-103(3) ("'Health care provider' means a physician, a dentist, a podiatrist, or health care facility.")  Thus, the Harbys may have filed the amendment to cure a technical defect.  Regardless of the reason, however, the contents of the Amended MMLP Application still put Big Sky on notice of the claim.

For one, Big Sky continued to be listed as a "Necessary and Proper" party "for any court action which might subsequently arise out of the same factual circumstances as set forth in this application." (Doc. 22-3 at 1, 3.)  Moreover, other than changing the location where Big Sky was listed on the MMLP form, the amendment did not substantively change the allegations in Application.  Both Applications contained negligence allegations against Big Sky and Dr. Cole, discussed Big Sky's loss of accreditation, and asserted Big Sky violated FDA regulations by failing to provide timely notice of the unreliable mammogram imaging.  (Docs. 22-3 at 10-13; 22-4 at 8-11.)  The Court finds these allegations,

along with the fact Big Sky continued to be listed as a "Necessary and Proper" party, reasonably constituted notice of a "circumstance which [was] likely to result in a demand for damages." (Doc. 22-1 at 9.)

Therefore, the Court concludes the Harbys made a claim against Big Sky during the 2015 Policy period.

2. <u>Whether the Claim was Timely Reported During the 2015 Policy Time Period.</u>

Next, the Court must determine if the claim was timely reported. Under the 2015 Policy, any claim made during the policy period had to be reported within 60 days of the Policy's expiration date, which was October 21, 2016. (Doc. 22-1 at 1, 19.) Big Sky did not report the claim until October 28, 2016. (Doc. 30 at ¶ 19.)

Big Sky concedes the claim was not reported until seven days after the expiration of the 2015 Policy's extended reporting period. Nevertheless, Big Sky asserts that coverage is not precluded under Montana's notice-prejudice rule. Big Sky asserts Capitol Specialty has not alleged, and cannot show, prejudice due to the short delay. Therefore, Big Sky argues Capital Specialty had a duty to defend under the 2015 Policy. Capitol Specialty counters that the notice-prejudice rule does not apply to claims-made policies. Capitol Specialty has the better argument.

"The 'notice-prejudice' rule in the realm of insurance law provides that late notice of a claim (i.e., notice outside the time limit established in the written

insurance policy) will not preclude coverage unless the insurer can demonstrate that it was prejudiced by the lateness of the notice." *Estate of Gleason v. Central United Life Ins. Co.*, 350 P.3d 349, 354 (Mont. 2015.)  To date, the Montana Supreme Court has only applied the notice-prejudice rule in the context of occurrence policies.  *See id.*; *Atlantic Cas. Ins. Co. v. Greytak*, 350 P.3d 63, 64 (Mont. 2015).  The Court has not directly addressed whether the notice-prejudice rule applies to claims-made policies.  In *Gleason*, however, Justice McKinnon noted in her dissent that claims-made policies should be excepted from the notice-prejudice rule.  *Estate of Gleason*, 350 P.3d at 370, n.2.  She explained "[a]pplying the notice-prejudice rule to a claims-made policy would essentially convert it, so the rationale goes, into an occurrence policy."  *Id.*  Further, in the most recent Montana Supreme Court case discussing claims-made polices, the Court did not discuss the notice-prejudice rule, even though the rule arguably could have applied to the case.  *See ALPS Prop. & Cas. Ins. Co. v. McLean & McLean*, 425 P.3d 651 (Mont. 2018) (finding a claim was not timely reported under a claims-made policy where it was reported over one month after notice of the cancellation of the policy).  Thus, *ALPS* suggests the Montana Supreme Court may not extend the notice-prejudice rule to claims-made policies.

Nevertheless, the issue has not been definitively resolved by the Montana Supreme Court.  When an issue of state law arises in a diversity action, and "the

16

state's highest court has not adjudicated the issue, a federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case." *Medical Laboratory Mgmt. Consultants*, 306 F.3d at 812 (citations omitted).  In doing so, the federal court must "look to existing state law without predicting potential changes in that law." *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001) (citation omitted).

Although the Montana Supreme Court has not directly ruled on the issue, several other courts have addressed the applicability of the notice-prejudice rule to claims-made policies.  The clear weight of authority holds that the rule does not apply to claims-made policies.  In *Craft*, for example, the Colorado Supreme Court rejected an invitation to extend the notice-prejudice rule to claims-made policies. *Craft,* 343 P.3d at 959-961. The Court reasoned, "[i]n a claims-made policy, the date-certain notice requirement defines the scope of coverage.  Thus, to excuse late notice in violation of such a requirement would rewrite a fundamental term of the insurance contract." *Id.* at 953.  Further, the Court stated that the public policy justifications for applying the notice-prejudice rule to occurrence polices do not support applying the rule to claims-made polices.  *Id.* at 960-61.  *See also Ehrgood v. Coregis Ins. Co.*, 59 F.Supp.2d 438, 444-45 (M.D. Penn. 1998) ("To require the insurer to show that it was prejudiced by the insured's belated disclosure of a foreseeable potential claim would not only vary the risks assumed by the insurer

17

but would also re-write the claims-made policy."); *Templo Fuente De Vida Corp.,* 129 A.3d 1069 (N.J. 2016) (holding insurer did not have to show it was prejudiced by an insured's failure to comply with the notice provision in a claims-made policy*); Gulf Ins. Co. v. Dolan, Fertig & Curtis*, 433 So. 2d 512, 515-16 (Fla. 1983) ("Claims-made or discovery policies are essentially *reporting* policies . . . If a court were to allow an extension of reporting time after the end of the policy period, such is tantamount to an *extension of coverage* to the insured gratis, something for which the insurer has not bargained. This extension of coverage, by the court, so very different from a mere condition of the policy, in effect rewrites the contract between the two parties.  This we cannot and will not do."); *Safeco Title Ins. Co. v. Gannon*, 774 P.2d 30, 35 (Wash.App. 1989) ("We find the notice prejudice rule does not apply to the claims after termination clause because to do so would be to provide coverage the insurer did not intend to provide and the insured did not contract to receive."); *Farm Bureau Life Ins. Co. v. Chubb Custom Ins. Co.*, 780 N.W.2d 735, 740 (Iowa 2010) (acknowledging "the harsh result sometimes resulting from strict enforcement of notice-of-claim policy provisions," but concluding "the purposes and characteristics of a claims-made policy necessitated strict compliance with notice requirements.").

The Ninth Circuit has similarly twice predicted that the notice-prejudice rule would not be extended to claims-made policies.  In *Burns v. Int'l Ins. Co.*, 929 F.2d

18

1422 (9th Cir. 1991), the court determined California would not extend the notice-prejudice rule to claims-made policies.  The Ninth Circuit found the distinction between occurrence and claims-made policies was critical, stating "[a] claims-made policy reduces the potential exposure of the insurer and is therefore less expensive to the insured.  To apply the notice-prejudice rule to claims-made policies would be to rewrite the policy, extending the policy's coverage at no cost to the insured." *Id.* at 1425.

More recently, the Ninth Circuit predicted Oregon would not apply the rule to claims-made policies because of the different purposes the notice provisions serve under each type of policy.  *Oregon Schools Activities Assoc. v. Nat'l Union Fire Ins. Co. of Pitt.*, 279 Fed.Appx. 494, 495 (9th Cir. 2008).  The court explained the purpose of a notice provision in an occurrence policy "is to allow the insurer to conduct a timely investigation of the incident giving rise to coverage." *Id.*  The court said applying the rule to occurrence policies "makes sense 'because doing so merely preserves *existing* coverage and, absent a showing of prejudice, does not materially alter the insurer's risk.'" *Id.*  In contrast, the court noted, "giving notice within the policy period is what actually creates coverage in the first instance" under claims-made policies. *Id.*  Thus, the court found allowing an insured to invoke the notice-prejudice rule under a claims-made policy would "provide

19

coverage the insurer did not intend to provide and the insured did not contract to receive." *Id.*

A small minority of courts have stated the notice-prejudice rule applies to claims-made policies. *See e.g. Sherwood Brands, Inc. v. Great Am. Ins. Co.*, 13 A.3d 1268, 1288 (Md. 2011); *In re: Squaretwo Fin. Servs. Corp.*, 2017 WL 4012818, *6 n.10 (S.D.N.Y. Sept. 11, 2017). In in those cases, however, a state statute provided that the notice-prejudice rule be applied. *Sherwood*, 13 A.3d at 1288 (applying Md. Ins. Code § 19-110); *Squaretwo*, 2017 WL 4012818 at n.10 (discussing N.Y. Ins. Law § 3420). Montana has no comparable statute.

The Court finds the reasoning of the majority view persuasive, and believes the Montana Supreme Court would likely hold the notice-prejudice rule does not apply to claims-made polices in light of the conceptual differences between occurrence and claims-made policies. Because claims-made polices reduce the potential exposure to the insurer, they are typically less expensive to the insured. *Burns*, 929 F.2d at 1425. If the Court were to extend the notice-prejudice rule to the policy here, it would effectively rewrite the policy. Big Sky would get more than what it bargained for, and coverage would be created where it did not previously exist. The Court believes Montana would not intend such a result. Therefore, the Court declines to apply the notice-prejudice rule to the facts of this case.

3.    Whether the Successive Policies Provided Seamless Coverage
for All Claims Falling Within Combined Terms of the Policies

Big Sky alternatively asserts that because the 2015 Policy was renewed in

2016, the Court should adopt the principle that any claims made within this

"seamless" coverage period should not be barred by untimely notice.  The

undisputed facts, however, show an intent to create three separate policies, not one

continuous policy.  Each policy clearly set out a discrete policy period, with a

defined inception and expiration date.  (Doc. 1-2 at 1; 22-1 at 1.)  Each policy had

a different policy number, and different premiums were paid.  (*Id.*)  The policies

were not simply an extension or renewal of the prior policy.  Big Sky applied

separately for each policy, and the premium and terms of coverage were

presumably set based upon the market conditions and the information disclosed in

each application for an insurance contract.

Moreover, the majority of courts have rejected Big Sky's successive policy

argument.  *See e.g. Ehrgood*, 59 F.Supp.2d at 445-47 (rejecting argument that

purchase of successive claims-made policies obviated the notice requirements of

each individual policy); *Checkrite Ltd., Inc. v.  Ill. Nat. Ins. Co.*, 95 F.Supp.3d 180,

191-94 (S.D.N.Y. 2000) (holding the "conceptual framework [applicable to claims-

made polices] applies where a policy is renewed, as well as when it is not, since

each policy year represents an agreement as to a specific period during which

claims made and reported will be covered."); *GS2 Eng'g & Envtl. Consultants v.*

21

*Zurich Am. Ins. Co.*, 956 F.Supp.2d 686, 692-95 (D. S.C. 2013) (rejecting insured's argument that successive polices should be treated as a single continuous policy or that the reporting period for a 2009 policy should be extended into the 2010 policy period); *Pantropic Power Prod., Inc. v. Fireman's Fund Ins. Co.*, 141 F. Supp. 2d 1366, 1370-71 (S.D. Fla. 2001) (finding the fact the insured had entered into two consecutive claims-made policies did not mean that the two policies merged to form one continuous policy period so as to make timely the insured's claim that was made during the first policy period but not reported until the second).

Big Sky cites three cases which arrive at a different conclusion: *Helberg v. Nat'l Union Fire Ins. Co.*, 657 N.E.2d 832, 835 (Ohio Ct. App. 1995); *Cast Steel Prods. v. Admiral Ins. Co.*, 348 F.3d 1298, 1304 (8th Cir.); and *AIG Domestic Claims, Inc. v. Tussey*, 2010 WL 3603844 (Ky. September 17, 2010).[6] But these cases not only represent a distinct minority view, they are also factually inapposite.

---

[6] *AIG Domestic Claims, Inc.* is an unpublished opinion of the Court of Appeals of Kentucky. Pursuant to the Kentucky Rules of Civil Procedure "[o]pinions that are not to be published shall not be cited or used as binding precedent in any other case in any court of this state; however, unpublished Kentucky appellate decisions, rendered after January 1, 2003, may be cited for consideration by the court if there is no published opinion that would adequately address the issue before the court. Opinions cited for consideration by the court shall be set out as an unpublished decision in the filed document and a copy of the entire decision shall be tendered along with the document to the court and all parties to the action." Ky. R. Civ. P. 76.28

In each of those cases, the claims-made policy contained an option to purchase an extension of time to report a claim if the policy was not renewed, but did not contain a provision for extending coverage if the policy was renewed.  The courts applied the maxim of construction that the "inclusion of specific things implies the exclusion of those not mentioned," and determined that because the policies only included a provision for extending the reporting requirement in the case of non-renewal, a renewal of the policy implicitly resulted in a continuation of coverage. *Helberg*, 557 N.E.2d at 834.  *See also*, *Cast Steel Products, Inc.,* 348 F.3d at 1304; and *AIG Domestic Claims, Inc.*, 2010 WL 3603844 at *3-4.

Without addressing the courts' reasoning and construction of the policies considered in those decisions, the policy here does not similarly limit the extension of the reporting requirement to cases of non-renewal.  The policy provides for an extension of the period in either situation.  If the policy is canceled or not renewed, the insured can purchase an extension of the reporting period.  (Doc. 22-1 at 20, Section V.5.)  In the case of non-renewal, the insured also has an automatic 30-day extended period for reporting claims first made against an insured during that extended 30-day period.  *Id.*  In addition, regardless of whether the policy is renewed, the policy also provides for an automatic 60-day extension for reporting any claim after the expiration of the policy period.  (*Id.* at 19, Section V.2.b.i.)

23

Consequently, the policy here expressly provides for an extended period for reporting claims in the event of renewal of the policy.

The three decisions cited by the Big Sky also found that it was "illogical and inequitable" to deny coverage to an insured who renews consecutive claims-made policies so that there is no lapse in coverage during the claims period. *Cast Steel Products*, 348 F.3d at 1304. As recognized by the dissent in *AIG Domestic Claims, Inc.,* this argument "at first blush" may have some "intuitive appeal." *AIG Domestic Claims, Inc.,* 2010 WL 3603855 at *5. But the argument ignores the nature of a claims-made policy, and essentially converts such a policy into an occurrence policy for any claim which arises during the span of consecutive policy periods. "It must be remembered that the reporting period defines coverage under a claims-made policy. To read an 'inherent' extended reporting period into a renewal policy would 'creat[] a long [and unbargained-for] 'tail' of liability exposure, the avoidance of which forms the conceptual framework for claims made coverage in the first instance.'" *Checkrite Ltd., Inc.*. 95 F.Supp.2d at 194 (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Bauman*, 1992 WL 1738 at *10 (N.D. Ill. January 2, 1992)).

To require an insured to report a claim in accordance with the agreed terms of a policy is neither illogical nor inequitable. Big Sky was aware of the Harbys' claim that it negligently failed to diagnose Ms. Harby's breast cancer for almost a

year prior to its 2016 application for insurance.  Big Sky could have reported the claim to Capitol Specialty at any time between September 2015 and October 21, 2016; it could have reported the claim when it applied for the 2016 Policy.[7]  For whatever reason, it chose not to do so.  In order to relieve Big Sky of the consequences of that decision, the Court would be required to rewrite a fundamental term of the policy and extend coverage beyond that contracted to provide.  The Court declines to do so.  In line with the majority of courts to consider the issue, the Court finds Big Sky's purchase of a third claims-made policy in August 2016 did not serve to extend the 2015 Policy's reporting period beyond the 60-day extension expressly written into the contract.

In sum, the Court concludes a claim was made against Big Sky during the 2015 Policy period.  But because it was not reported until after expiration of the 60-day extended reporting period, there was no coverage under the 2015 Policy.

### B.    Coverage under the 2016 Policy

Capitol Specialty argues there is no coverage under the 2016 Policy based on two separate, but related, exclusions.  First, Capitol Specialty asserts the Prior Knowledge exclusion applies because Big Sky had notice of the Harbys' claim on the inception date of the 2016 Policy.  Second, Capitol Specialty states coverage is

---

[7] This is not like the situation presented in *Cast Steel Products, Inc.* where a claim was reported "mere hours" after the expiration of the first policy period.  *Cast Steel Products, Inc.,* 348 F.3d at 1304.

precluded because Big Sky failed to disclose the Harbys' claim on the 2016 Policy Application.

Big Sky counters that it had no duty to notify Capitol Specialty of a potential claim because the Harbys had abandoned their claim against Big Sky by filing the Amended MMLP Application.  Thus, Big Sky asserts the Prior Knowledge and Policy Application exclusions do not apply.

Claims-made polices are typically written to exclude coverage for claims the insured knew of prior to the policy.  Known loss exclusions "embody the concept that one may not obtain insurance for a loss already in progress, or for a loss that the insured either knows of, planned, intended, or is aware is substantially certain to occur."  43 Am.Jur.2d, Insurance § 469.  Consistent with this general principle, the 2016 Policy excluded coverage for any "Incident . . . if, on the Inception Date of this Policy, the Insured knew . . . [or] should have known . . . that such Incident may result in a Claim."  (*See* Doc. 1-2 at 18, Section IV.q.)

Although the Montana Supreme Court has not analyzed this particular exclusion, many courts employ a two-prong "subjective-objective" test to address exclusions concerning an insured's prior knowledge.  Under this approach, the court first "asks the subjective question of whether the insured knew of certain facts and then asks the objective question of whether such facts could reasonably

have been expected to give rise to a claim." *Am. Special Risk Mgmt. Corp. v. Cahow*, 192 P.3d 614, 625 (Kan. 2008).

Almost a year before the inception date of the 2016 Policy, the Harbys filed the Amended MMLP Application on September 11, 2015.  (Doc. 22-3.)  Big Sky does not dispute that it was aware of the Amended MMLP Application.  As previously discussed, the Amended MMLP Application did not abandon the claims against Big Sky.  To the contrary, the Amended MMLP Application specifically notified Big Sky that it was a "necessary and proper" party "for any court action" arising out of the Harbys' malpractice allegations.  (Doc. 22-3 at 1, 3.)  Moreover, the Amended MMLP Application contained substantive negligence allegations against Big Sky.  (*Id.* at 4, 8-9, 11.)  The Court therefore finds that by September 2015 Big Sky knew of the facts underlying the Harbys' claim, and reasonably could have expected those facts to give rise to a claim for damages.  Further, under the language of the policy exclusion, Big Sky "knew" or reasonably "should have known" that its alleged failure to diagnose Ms. Harby's cancer "may result in a claim."  Accordingly, the Court finds the Prior Knowledge exclusion applies.

The Court also finds coverage is precluded by the 2016 Policy Application.  The 2016 Policy Application was signed on August 10, 2016 by Dr. Cole in his capacity as medical director of Big Sky.  (Doc. 22-7.)  The Policy Application asked, "[i]s Applicant aware of any actual or alleged fact, circumstance, situation,

27

error or omission, which can reasonably be expected to result in a Claim, suit or proceeding being made against Applicant?" (*Id.* at 4.)  The corresponding box for "no" was checked.  (*Id.*)  Immediately following this question, the Policy Application stated:

> **The policy for which Applicant is applying, if issued, will not insure any Claims that can reasonably be expected to arise from any actual or alleged fact, circumstance, situation, error or omission known to any Applicant before the Inception Date of the policy.**

(*Id.*)

Capitol Specialty asserts that at the time the Policy Application was signed, Big Sky was aware of the Harbys' MMLP claim and the factual allegations that would eventually comprise the underlying malpractice lawsuit.  The Court agrees. As discussed, based on the face of the Harbys' Amended MMLP Application, Big Sky was aware of facts that reasonably could be expected to result in a Claim or suit.

Because Big Sky had knowledge of facts that reasonably could have given rise to the Harbys' lawsuit at both the inception of the 2016 Policy, and when it signed the 2016 Policy Application, the Court finds coverage is precluded under the 2016 Policy by the Prior Knowledge exclusion and the 2016 Policy Application.

/ / /

/ / /

28

### C.    Mammogram Exclusion

The parties also disagree as to whether there is coverage because of the mammogram exclusion.  Capitol Specialty asserts the Harbys' claims arose out of Big Sky's performance of Mrs. Harby's September 9, 2013 mammogram, and thus, there is no coverage due to the mammogram exclusion.  Big Sky counters that the mammogram exclusion does not extend to ultrasounds.  Big Sky points out the Harbys' malpractice claim was based, in part, on negligence in the interpretation of an ultrasound examination.  Thus, Big Sky asserts Capital Specialty has a duty to defend under the "mixed action" rule.  *See State Farm Fire & Cas. Co. v. Schwan*, 308 P.3d 48, 51 (Mont. 2013) (requiring insurers "to defend all counts in a complaint so long as one count potentially triggers coverage, even if the remaining counts would not be covered").

In light of the Court's determination that there is no coverage under either the 2015 Policy or the 2016 Policy, the Court need not reach the applicability of the mammogram exclusion.

### D.    Reimbursement of Attorney Fees and Costs

Finally, Capitol Specialty argues that it is entitled to reimbursement of attorney fees and costs advanced for Big Sky's defense in the underlying malpractice action.  The Court has determined that there was no coverage under

either the 2015 Policy or the 2016 Policy, and therefore, Capitol Specialty did not have a duty to defend Big Sky.

Under Montana law, an insurer may recover the expenses it "incurred in defending a claim outside of the insured's policy coverage in the declaratory judgment action." *Horace Mann Ins. v. Hanke*, 312 P.3d 429, 434 (Mont. 2013). To recover defense costs, the insurer must (1) timely and explicitly reserve the right to recoup costs; and (2) provide the insured with adequate notice of the possible reimbursement. *Travelers Cas. & Sur. Co. v. Ribi Immunochem Research, Inc.*, 108 P.3d 469, 478-80 (Mont. 2005). Such a reservation of right is "enforceable where an insurer meets these conditions even absent an express agreement by the insured." *Id.* at 480.

Here, Capitol Specialty timely and explicitly reserved the right to seek reimbursement of defense costs in the reservation of rights letter dated April 26, 2017. (Doc. 22-5.) The letter clearly stated that Capitol Specialty reserved the right "to seek recoupment or reimbursement of any defense costs it expends in defending the Harbys' action, should a court subsequently determine there is no coverage under the Policy for the Harbys' claims." (*Id.* at 4.) As such, Capitol Specialty meets the requirements for reimbursement of defense costs.

/ / /

/ / /

## V.     CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that:

1.  Capitol Specialty's Motion for Summary Judgment (Doc. 21) be

**GRANTED**;

2.  Big Sky's Cross-Motion for Summary Judgment (Doc. 26) be **DENIED**;

3.  Capitol Specialty shall have 14 days from the date of Judge Watters' final order on the cross motions for summary judgment to submit their costs expended in the underlying malpractice lawsuit.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendation of United States Magistrate Judge upon the parties.  The parties are advised that, pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court, and copies served on opposing counsel, within fourteen (14) days after entry hereof, or objection is waived.

**IT IS ORDERED.**

DATED this 30th day of January, 2019.

TIMOTHY J. CAVAN
United States Magistrate Judge

31