Robert L. Sterup
BROWN LAW FIRM, P.C.
315 North 24th Street
P.O. Drawer 849
Billings, MT 59103-0849
Tel. (406) 248-2611
Fax (406) 248-3128
rsterup@brownfirm.com
*Attorneys for Defendant*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| CAPITOL SPECIALTY INSURANCE CORPORATION,<br><br>Plaintiff,<br>Counter-defendant,<br><br>vs.<br><br>BIG SKY DIAGNOSTIC IMAGING, INC.,<br><br>Defendant/<br>Counterclaimant | Cause No.: CV 17-54-SPW-TJC<br><br>**SECOND DECLARATION OF HANNAH STONE, Esq.** |

I, Hannah Stone, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am over the age of 18 and competent to be a witness in this case.

2. This Declaration is in Rebuttal to Capitol Security Insurance Corporation's (hereafter "CSIC") January 10, 2020 expert report of Mr. Calvin Stacey, as well as affidavits of Mr. Harlan Westgate dated March 20, 2019, April

Second Declaration of Hannah Stone, Esq. Page 1

17, 2019, and May 13, 2019.

3. I respectfully disagree with the characterization of the underlying *Harby* case as posing more complexity than those cases typically seen by attorneys who routinely practice medical malpractice defense. It remains my opinion that the amount and character of time and services rendered by the Crowley firm exceeds that reasonably necessary to defend the matter, as demonstrated by the following:

    A. Based on my review of the Complaint and Big Sky Diagnostic Imaging's (hereafter "BSDI") Responses to Discovery, the investigation by the Food and Drug Administration ("FDA") which resulted in the loss of BSDI's American College of Radiology accreditation occurred in 2013, and was thus completely concluded by the time the Crowley firm became involved in BSDI's defense. BSDI was required to cease performing mammography on January 31, 2014. Nevertheless, the Crowley firm's invoices reflect substantial time and expense was devoted to researching and analyzing FDA procedures, testing protocol, regulations and "issues," despite the fact that the administrative proceeding was closed prior to the *Harby* case being filed.

B. The Crowley firm's invoices further reflect significant time and expense was devoted to "research" and/or "analysis" of issues that were never raised. Topics included piercing the corporate veil, agency, punitive damages, and spoliation, all areas of Montana law that an experienced practitioner is familiar with. While it is the role of defense counsel to be aware of potential collateral issues, devoting significant time to analysis and research of unraised claims neither furthered the case nor was necessary for the defense based on claims advanced by the Harbys.

C. Another example is that while CSIC argues that it was reasonable and necessary to devote numerous hours to reviewing, analyzing, researching, summarizing and reporting on BSDI's medical equipment, its June 30, 2017 Response to Request for Admission Number 9 confirms BSDI was "unaware of any errors relating to Mrs. Harby's Sept. 9, 2013 mammogram or ultrasound due to equipment." Since this defense was not a primary focus, the time and expense devoted to equipment issues warrants reduction.

D. These are some examples that support my opinion that substantial time and resulting expense was devoted to analyzing issues, case

strategy and legal research that was not legally necessary to defend BSDI in the pending matter. Therefore, 542.4 hours, or $113,830.95, in fees devoted to analysis, strategy and research merits a downward adjustment, as does 143.5 hours, or $29,212.50, devoted to reporting such issues to CSIC.

4. I also disagree that ample time was necessary to analyze, review and report on other patients and the potential of class claims as referenced by Mr. Westgate and Mr. Stacey. As discussed *infra*, BSDI ceased mammography services on January 31, 2014, and thus the 3-year statute of limitations would have run by January 31, 2017, which was exhausted two weeks before the Crowley law firm filed BSDI's Answer on February 15, 2017. Further, the FDA required BSDI to "notify at-risk patients and their referring healthcare providers about the problems at your facility no later than March 6, 2014."[1] Therefore, by at least March of 2017, the Crowley firm should have known that additional claims or a class action had not been filed, and to the extent those claims were contemplated, their focus could remain on the *Harby* claim. The amount of services rendered towards phantom claims exceeded what was reasonable and necessary under the circumstances, thus supporting a downwards adjustment.

---

[1] *BSDI's Responses to Plaintiff's First Discovery Requests*, p 15 (June 30, 2017)

Second Declaration of Hannah Stone, Esq.                                    Page 4

5. I respectfully disagree with Mr. Westgate and Mr. Stacey's opinions that the *Harby* claim presented the likelihood of a verdict in excess of $1 million dollars. At the outset, unlike the majority of delayed diagnosis claims, Ms. Harby's treatment was thankfully successful, as opposed to the majority of these cases where the result is death. Her damages were therefore anchored by the delay and intervening treatment, some of which would have been medically necessary had the diagnoses been made earlier. While I do agree that Montana's medical malpractice damage cap is ripe for a constitutional challenge, the facts in the *Harby* matter made this outcome unlikely. Therefore, the potential verdict or settlement amount does not, in my opinion, reflect the fees incurred by the Crowley firm. This is even more apparent when Plaintiff was willing to dismiss BSDI without payment.

6. I respectfully disagree that the professional skill and experience of the Crowley attorneys justified the type of fees incurred in this matter. One prime example of this distinction is how the volumes of materials (18 banker boxes) were handled by the two defense firms. It is not uncommon for experienced litigators to be provided boxes, rooms or even basements of unsorted and wide ranging documents, records, manuals, etc. at the outset of a case. It is the role of counsel to identify the scope and relevance of such documents, and formulate a plan to

efficiently and economically organize and thus focus on documents that are necessary in the pending matter.

    A.    As evidenced by the billing records of Browning, Kaleczyc, Berry & Hoven (hereafter "BKBH") and Crowley, both firms received scanned and printed copies of the banker box documents on May 10, 2017. Billing entries indicate that BKBH spent 22.9 hours, or $3,937.50 in fees, for reviewing and sorting through the materials, whereas the Crowley firm's entries reflect 195.6 hours, or $29,439.00 in fees, were incurred for review, analysis and "management" of the same volume of records during the same time period. To wit, both defendants responded to discovery requests on June 30, 2017, after receiving the documents. BKBH's invoices demonstrate that Mr. Hoven's skill and expertise resulted in an efficient and cost-effective management of the 18 banker boxes of documents. By comparison, the Crowley fees exceed those reasonably incurred to address the same set of materials.

    B.    Another example that illustrates the efficiency of experienced counsel relates to discovery. The Crowley firm incurred 283.4 hours, or $49,642.50, for discovery. I have reviewed a copy of the highlighted entries comprising of time devoted to review, analysis, summarization

and preparation of discovery by the Crowley firm. This is in addition to the reports issued to CSIC (143.5 hours, or $29,212.50) and review of medical records/chronology (198.5 hours or $24,721.00), which contain redundant entries for summarization, analysis and strategy of the same categories of information. Further, BSDI only provided responses to one set of discovery compromising of 21 pages, which, upon review, fails to justify the amount of fees incurred. Given the claims and information available, BKBH more efficiently and economically compiled, summarized and dealt with the same set of documents, demonstrating a reduced time and expense was appropriate under the circumstances.

7. Finally, based on the Affidavit filed by Dr. Jesse Cole, I understand CSIC alone reviewed and approved the Crowley invoices, despite the fact that the instant action had been filed on May 3, 2017, and sought recoupment of such fees. It is my opinion that the failure to advise BSDI of the mounting fees and costs left it at a significant disadvantage, as it could have approached the Harbys much earlier for a "cost of defense" or "nuisance value" settlement that would have achieved the same result at a significantly reduced cost, especially given the claim was ultimately dismissed with no payment made by CSIC or BSDI. It is further

concerning that while Mr. Westgate was aware of the increasing costs, potentially through the 143.5 hours, or $29,212.50, in "reporting" fees, the client was not routinely informed and updated about the mounting bills to which it was being exposed. This facet alone merits a downward adjustment to BSDI's reasonable expectation of defense costs.

8. In conclusion, it is my opinion that the time and fees shown in the Crowley firm's invoices were unnecessary to achieve the results secured, and exceed the amount that was necessary for the defense of BSDI in the *Harby* matter. The billing statements of Mr. Hoven and the BKBH firm more accurately reflect the type of fees reasonable and necessary as demonstrated by the *Plath* factors. It is my opinion that the fees requested merit a downward adjustment to 762.3 hours, or $138,954.50.

DATED this 16th day of January, 2020.

_____
Hannah Stone, Esq.